**NF INDUSTRIES, INC., et al.,
Plaintiffs-Appellees,**

v.

**EXPORT–IMPORT BANK OF the
UNITED STATES, et al.,
Defendants,**

**Foreign Credit Insurance Association,
Defendant-Appellant.**

**No. 88–2323.**

United States Court of Appeals,
Fifth Circuit.

May 27, 1988.

[redacted]

[redacted]

---

Henry A. Hubschman, Elliot Polebaum, Washington, D.C., C. Henry Kollenberg, Houston, Tex., for defendant-appellant.

Robert M. Hardy, Jr., Houston, Tex., for plaintiffs-appellees.

John C. Hoyle, John F. Cordes, Civil Div. Appellate Staff, Dept. of Justice, Washington, D.C., for Export-Import Bank of the U.S.

[redacted]

Before RUBIN, HIGGINBOTHAM and SMITH, Circuit Judges.

PER CURIAM:

Defendant Foreign Credit Insurance Association ("FCIA") has filed notice of appeal from an interlocutory Memorandum and Order of the district court, dated March 16, 1988, that *inter alia* denies, pending trial, FCIA's claim of official immunity. We now review the motion of NF Industries, Inc. ("NF") to dismiss the appeal for want of jurisdiction and FCIA's motion to stay district court proceedings (including, most significantly, a trial scheduled to begin June 13, 1988) pending resolution of the appeal. We grant the motion to dismiss the appeal, thus mooting the motion for stay.

## I.

NF provides geophysical services for the oil and gas industry in the Western Hemisphere. FCIA is an unincorporated association of insurance companies that, in conjunction with a federal governmental agency, the Export-Import Bank of the United States ("Eximbank"), participates as an insurer and marketer of export credit insurance policies sold to American exporters, providing coverage similar to that offered by companies not in privity with Eximbank. FCIA's companies insure commercial credit risks, and Eximbank insures political risks. The companies receive 80 percent of the premiums on commercial risk insurance policies which they sell; they receive nothing from Eximbank.

In 1979, NF contracted with an Argentine company to provide services there and obtained an export credit risk policy through FCIA. The Falkland Islands War ensued. NF consulted FCIA for advice as to how to handle currency transactions under wartime restrictions. FCIA advised NF to have its customer remit payment in pesos to an Argentine bank and that Eximbank would indemnify NF for the dollar equivalent.

Eximbank denied NF's claim for coverage after payment was made in accordance with FCIA's advice. NF claims that because of a conflict of interest, FCIA had intentionally misled NF to arrange the peso payment in order to shift liability into Eximbank's political risk coverage.

NF and its lender filed suit in state court claiming, *inter alia*, breach of contract and various tort claims, including negligence and violation of the Texas Deceptive Trade Practices Act and Texas Insurance Code. The suit was removed to federal court.

As to the tort claims, FCIA moved for summary judgment, asserting official immunity as the agent of Eximbank. In 1986, the district court, in two orders which we find somewhat confusing, ruled that FCIA acted solely as an agent of Eximbank and was entitled to official immunity; but the court added that FCIA was not dismissed from the suit and could be sued under the Federal Tort Claims Act ("FTCA") on the tort claims mentioned in the preceding paragraph but not on other alleged claims not permitted by the FTCA

(such as those for punitive damages). FCIA also remained in the suit to face NF's contract claims.

Extensive discovery ensued. In February 1988, NF filed an amended complaint dropping its breach-of-contract claim. Prior thereto, NF had filed a motion seeking reconsideration of the purported grant of official immunity contained in the district court's 1986 orders. On March 16, 1988, the court granted reconsideration on the basis of intervening caselaw and fact issues resulting from late discovery. It vacated the ruling that had granted official immunity and set a trial date for June 13, 1988, at which time plaintiff would be able to develop a case on all of its tort claims. FCIA filed notice of appeal, attempting to avail itself of the jurisdiction which the courts have recognized in appeals from interlocutory orders denying claims of immunity.

## II.

In deciding the motion to dismiss the appeal, we are faced, in its purest terms, with a jurisdictional issue. While our explicit statutory jurisdiction is limited to final judgments, the doctrine that some interlocutory orders are effectively final, announced in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), confers jurisdiction of collateral orders that meet the tests applied in *Cohen*. The parties are in agreement that the immunity claimed here by FCIA is absolute (not qualified and not sovereign) governmental immunity. Denial of such claims of immunity has repeatedly been held to be appealable under the *Cohen* rule. *E.g., Nixon v. Fitzgerald*, 457 U.S. 731, 743, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982); *Abney v. United States*, 431 U.S. 651, 658–63, 97 S.Ct. 2034, 2039–42, 52 L.Ed.2d 651 (1977). *See Helstoski v. Meanor*, 442 U.S. 500, 506–08, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30 (1979).

In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court held that the *Cohen* exception is available for appeals from denials of *qualified* immunity. There, the Court noted that only

the denial of a *substantial* claim of absolute immunity is appealable before final judgment under *Nixon v. Fitzgerald. See Mitchell*, 472 U.S. at 525–26, 105 S.Ct. at 2815. We find that FCIA has made no showing *at this point* sufficient to carry its burden of establishing a *substantial* claim of official immunity. Absent such a showing, we have no jurisdiction—via *Cohen* or otherwise—to entertain the instant interlocutory appeal.

## III.

We conclude, in short, that FCIA has failed to establish to our present satisfaction that it was serving a governmental function, or making the kind of decision that is protected by absolute official immunity. The reason for such immunity is not to shield wrongdoers from liability, but to safeguard the public's interest in having government officials free to make discretionary, policymaking decisions without threat of being sued, put to trial, and possibly held liable in their non-official capacities for those decisions. *See Barr v. Matteo*, 360 U.S. 564, 569–71, 79 S.Ct. 1335, 1338–39, 3 L.Ed.2d 1434 (1959). FCIA has not made, at this point, a substantial showing that it was exercising such a role.

It appears that the participation of FCIA and its associated companies in the transactions at issue was both voluntary and proprietary. Governmental functions, generally, are neither. The companies decided whose risks to accept, and whose to decline, and with what policy dollar limits, all with a view to maximizing profits. FCIA has not demonstrated to us that it was performing any governmental function or making any discretionary (i.e., policymaking) governmental decisions.

In this regard we find instructive the recent case of *Nu-Air Manufacturing Co. v. Frank B. Hall & Co.*, 822 F.2d 987 (11th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). The plaintiff, a manufacturer, sued FCIA for breach of contract and negligent misrepresentation regarding export insurance. FCIA defended in part on the ground that it was not subject to the principles of waiv-

er and estoppel because it, as the agent of Eximbank (a status which the court assumed *arguendo* ), issues insurance on behalf of a United States government agency. On the same basis, FCIA claimed absolute official immunity.

The court rejected FCIA's claimed immunity, noting that "[t]he justifications for immunity will seldom be present ... when the defendant's connection with government is limited to a business relationship. Once shielded from tort liability, there is always the danger that a private enterprise will become too fearless, too vigorous, and too effective. Thus, courts have only extended official immunity to the private sector on those *rare occasions* when the need is pressing." 822 F.2d at 995 (emphasis added).[1]

Insofar as the showing which FCIA has made to us on its claim of immunity justifying a *Cohen* appeal is concerned, we agree with the conclusion reached in *Nu-Air.* To the same general effect is *Westfall v. Erwin,* —— U.S. ——, 108 S.Ct. 580, 98 L.Ed. 2d 619 (1988), denying—on the state of the record—a claim that a person actually employed by the federal government enjoyed absolute official immunity. The government employee was sued for negligently allowing a harmful substance to be stored at an army installation. The Court of Appeals, 785 F.2d 1551, 1552 (11th Cir.1986), reversed a district court summary judgment to the effect that defendant was absolutely immune, holding that summary disposition was inappropriate because plaintiffs had "alleged undisputed facts sufficient to create a material question of whether or not [the] complained-of acts were discretionary." *Id.* at 1553.

The Supreme Court affirmed the Court of Appeals, noting that the primary purpose of official immunity is to prevent "disruption of governmental functions." —— U.S. at ——, n. 3, 108 S.Ct. at 583 n. 3. Thus, the Court reasoned, the test is whether the official's conduct is *discretionary* in nature. "When an official's conduct

is not the product of independent judgment, the threat of liability cannot detrimentally inhibit that conduct.... Because it would not further effective governance, absolute immunity for nondiscretionary functions finds no support in the traditional justification for official immunity." —— U.S. at ——, 108 S.Ct. at 584. And by "discretionary," it is evident in context that the Court meant activities that involve "policy-making work for the United States Government." —— U.S. at ——, 108 S.Ct. at 585.

FCIA has called our attention to cases such as *Devargas v. Mason & Hanger-Silas Mason Co.,* 844 F.2d 714, (10th Cir.1988), holding (i) that a private corporation performing under a contract with a federal government agency may bring an interlocutory appeal under *Mitchell v. Forsyth* from a denial of qualified immunity and (ii) that such corporation is entitled to qualified immunity. But in *Devargas,* the company was performing security services at an army installation—a function that is undeniably governmental and that, absent the private contract, would have been performed by a governmental agency. The court held that "when private party defendants act in accordance with the duties imposed by a contract with a governmental body, perform a governmental function, and are sued solely on the basis of those acts performed pursuant to contract, qualified immunity is proper." *Id.* (footnote omitted).

## IV.

FCIA has made no showing here that its duties require the exercise of governmental policymaking as distinguished from insurance policy-writing. Its activities are performed, as the plaintiff has noted, long after any governmental discretion or policymaking (on the part of Eximbank officials or anyone else) has been exercised. As noted *infra,* FCIA is engaged primarily, if not exclusively, in the private business of insurance for profit. Its companies are

1. The court further noted that even Eximbank, though a government agency, would not be immune from suit when engaged, as in *Nu-Air,* in "the commercial sphere." *Id.* at 996. Hence, FCIA, as its purported agent, could not be immune, either. *Id.*

paid by its customers, the insureds. The companies appear to act only as insurers, sharing in the profits and losses generated by the sale of their policies. They sell policies like those sold by other companies, not in privity with Eximbank, with whom they compete. And unlike most governmental agencies, which have mandated duties and a fixed "clientele," they are free (like any private company) to choose with whom they shall deal.

In summary, based upon the record before us, FCIA has not made a showing of a *substantial* claim of absolute official immunity that is required by *Mitchell v. Forsyth* and *Nixon v. Fitzgerald* to entitle it to an interlocutory appeal from the district court's order denying such immunity. That is, it has made no substantial showing that the activities in which it was engaged are of the sort that justify the absolute insulation from trial which official immunity provides.

"Courts must not lose sight of the purposes of the official immunity doctrine when resolving individual claims of immunity...." *Westfall v. Erwin*, — U.S. at ——, 108 S.Ct. at 585. We are reminded that the only justification for immediate appealability of interlocutory orders denying official immunity is to free government officers making truly discretionary, policy-making decisions from the chilling threat not only from ultimate liability but even from facing trial if their decisions cause harm. No other rationale justifies the disruption occasioned by an interlocutory appeal.

FCIA has not shown us, in opposing the motion to dismiss the appeal, that it engages in that sort of protected activity. Hence, we do not at this time have the special jurisdiction which a substantial claim of official immunity would confer.

Our decision intimates no opinion concerning the proper resolution of immunity issues at trial. In his order of March 16, 1988, the district judge reconsidered his 1986 orders in the light of *Nu-Air Manufacturing Co. v. Frank B. Hall & Co.* and *Westfall v. Erwin* and the new fact issues developed by intervening discovery. Thus,

the court has decided to "allow plaintiff to submit to the jury all its claims against FCIA ... if there is enough evidence to go to the jury. The Court could, then, resolve the questions of law on post-judgment motions for judgment notwithstanding the verdict. Under this approach, if the appellate court finds this Court ruled incorrectly on these issues of law, the case will not have to be retried."

We commend the court for its correct handling of this matter. In *Westfall*, the Court found that "the relevant factual background [for determination of the immunity claim] is undeveloped," — U.S. at ——, 108 S.Ct. at 585, and remand was appropriate. The same should obtain here.

The right of a government official or agency to immunity from trial as well as from liability is important to the proper functioning of our government. The ability to appeal adverse trial court decisions so that trial itself can be averted is therefore an integral part of the proper enforcement of immunity protection. Our decision in this case does not invite a battle concerning substantiality in every appeal of a trial court order denying absolute or qualified immunity. In this unusual case, the district court's opinion is buttressed by the opinion of a circuit court of appeals dealing with a virtually identical claim by the same agency. Moreover, the parties have engaged in extensive discovery, and the trial date is imminent. Under these circumstances, the need to demonstrate that the immunity defense is substantial requires more detailed inspection.

## V.

We caution that we make here no determination as to whether FCIA is entitled to absolute immunity under the facts of this case as they may be developed at trial. Our observations regarding immunity are based upon an incomplete record and are in no respect to be viewed as law of the case on the central defense of official immunity. Resolution of that issue awaits trial and, if necessary, an appeal from final judgment.

The motion to dismiss the appeal is GRANTED.