# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 7, 2010

No. 09-20441

Lyle W. Cayce
Clerk

KRISTEN MARTIN; DONALD TOLFREE, deceased,

> Plaintiffs - Appellees

v.

HALLIBURTON; KBR INC; KELLOGG BROWN & ROOT INC; KELLOGG BROWN & ROOT SERVICES INC; SERVICE EMPLOYEES INTERNATIONAL INC,

> Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before KING, JOLLY, and STEWART, Circuit Judges.

KING, Circuit Judge:

The opinion in this case filed on March 23, 2010, *Martin v. Halliburton*, 601 F.3d 381 (5th Cir. 2010), is amended by the addition thereto of a new paragraph II.E, and the opinion, as amended, reads as follows:

Defendants–appellants, affiliated governmental contractors providing logistical support to the United States Army in Iraq, appeal the denial of their Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Plaintiffs–appellees move to dismiss the appeal for lack of subject matter jurisdiction. We lack subject matter jurisdiction and must dismiss the appeal.

No. 09-20441

## I. BACKGROUND

### A.    Factual Background

This case reaches us still in its infancy, and the record is accordingly underdeveloped. The facts that follow are drawn primarily from the complaint below and from attachments to motions filed in the district court.

Defendants[1] are affiliated governmental contractors providing logistical support to the United States military in Iraq. Plaintiff–appellee Kristen Martin is the adult daughter of Donald Tolfree, a civilian employed by Defendants. Tolfree was recruited by Defendants in December 2006 to drive trucks in convoys in Iraq. Martin alleges that Tolfree relied on Defendants' assurances that he would be 100% safe and protected by the United States military during his employment in Iraq. Tolfree arrived in Iraq in January 2007, where he was assigned to Logistics Support Area (LSA) Anaconda. In February 2007, he was asked if he would volunteer to drive a "chase truck" in an upcoming convoy.[2] Tolfree agreed to do so.

Martin's complaint alleges that Defendants acted negligently in executing the convoy operation. According to Martin's complaint, there was no written policy regarding the use of chase trucks, and Tolfree—who had been onsite for less than one month—was not told of any unwritten policies. Tolfree believed that his duty was to follow the convoy from its departure point within LSA Anaconda to the base's north gate, a distance of about ten miles. He believed that he would be contacted by radio and instructed to turn around at the

---

[1] Specifically, they are Halliburton; KBR, Inc.; Kellogg Brown & Root, Inc.; Kellogg Brown & Root Services, Inc.; and Service Employees International, Inc. The complaint filed also listed ten individual defendants as "John Doe." John Doe 1 is alleged to have been the "convoy commander," "an employee of Defendants acting in a supervisory/command capacity" over the decedent during the convoy operation at issue in this case. John Doe 1 is not a party to this appeal. For simplicity, we refer to appellants collectively as "Defendants."

[2] A "chase truck" is a semi-truck without an attached trailer that acts as a backup in the event that a truck with an attached trailer becomes disabled during the convoy.

appropriate time. Tolfree's chase truck was equipped with a non-military radio, and a radio dead zone prevents non-military radio communications around the perimeter of LSA Anaconda. As a result, Tolfree followed the convoy past the north gate, at which point Defendants radioed for "the extras" to turn around. Tolfree did so, passing at least two vehicles at the rear of the convoy. The drivers of those vehicles confirmed with the convoy commander that the extra trucks were no longer to be part of the convoy. The convoy commander did not contact the sentry posted at the north gate about Tolfree's return.

Military protocol requires trucks such as the one Tolfree was driving to be accompanied by gun trucks during a return to camp. The sentry posted at the north gate of LSA Anaconda saw Tolfree's chase truck returning and, noting that none of Defendants' trucks was scheduled to enter the camp, applied protocol for dealing with unscheduled and unescorted vehicles attempting to enter LSA Anaconda. Tolfree died instantly when a gunner fired one hundred .50-caliber rounds into the chase truck.

Martin alleges that a representative of Defendants falsely informed her that Tolfree had been killed by an insurgent's roadside bomb rather than by friendly fire. Her complaint alleges that Defendants continued to misrepresent the circumstances of Tolfree's death as late as a year after the fact.

## B.     The Logistics Civil Augmentation Program

Defendants' involvement in convoy operations in Iraq occurs under the auspices of the Logistics Civil Augmentation Program (LOGCAP). In 1985, the United States Army issued Army Regulation 700–137, which initiated LOGCAP. Army Reg. 700–137, at 1–1 (Dec. 16, 1985). The LOGCAP regulations describe LOGCAP's purpose as "to preplan for the use of civilian contractors to perform selected services in wartime to augment Army forces. Utilization of civilian contractors in a theater of operation will release military units for other missions or fill shortfalls." *Id*. The LOGCAP regulations

expressly state that "[c]ontractors will not be used to perform inherently governmental functions." *Id.* at 3–2(d)(8). The term "governmental function" is defined as "[a] function which is so intimately related to the public interest as to mandate performance by Government employees. These functions include those activities which require either the exercise of discretion in applying Government authority or the use of value judgements in making decisions for the Government." *Id.* at Glossary § I.

On December 14, 2001, under the authority of the LOGCAP Program, the Army awarded Contract No. DAAA09-02-D-0007 (the "LOGCAP III Contract") to Brown & Root Services, Inc., a division of Kellogg Brown & Root.[3] The LOGCAP III Contract was designated a "rated order" contract, making its performance mandatory under the Defense Production Act of 1950 (DPA), 50 U.S.C. app. §§ 2061–2171. The willful failure to perform a rated order contract carries a criminal penalty. *See id.* §§ 2071(a) & 2073. Defendants aver that the logistics and transportation services in which Tolfree was engaged were performed pursuant to Task Order 139, issued by the Army in August 2006. Only the first two pages of the LOGCAP III Contract are in the record, and Task Order 139 is completely absent. Martin alleges (and Defendants admit in their answer) that there was a novation of the LOGCAP III Contract in 2003 that transferred contractual duties from Kellogg Brown & Root to Kellogg Brown & Root Services. The two pages from the LOGCAP III Contract that are in the record bear a date stamp of December 14, 2001, which precedes the novation by a minimum of one year.

---

[3] Some of Martin's allegations and the parties' arguments rely on the relationship of Defendants to each other and to the Government. Our resolution here does not require us to unravel those relationships, a task that would be challenging given the state of the record before us.

No. 09-20441

## C.     Procedural History

Martin filed a diversity suit in district court on February 5, 2009, asserting state law tort claims against Defendants for their actions in recruiting Tolfree, executing the convoy operation, and misrepresenting the cause of his death.[4] On April 3, 2009, Defendants moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, urging several distinct theories: (1) official immunity; (2) derivative sovereign immunity; (3) immunity under the DPA; and (4) preemption of state law under the combatant activities exception to the Federal Tort Claims Act (FTCA).  Several exhibits were attached to their motion, including two Army regulations, an Army field manual, and two pages of the LOGCAP III Contract.[5]  The district court denied the motion without opinion or explanation on June 8, 2009.[6]  Defendants then filed an answer and appealed the district court's order.  The record does not reflect that Defendants requested that the district court either explain its

---

[4] The claims are for negligence, wrongful death, fraud and fraud in the inducement, intentional infliction of emotional distress, survivorship, and civil conspiracy to commit fraud. Martin also seeks punitive damages for fraud, malice, and gross negligence.

[5] We confess to being somewhat perplexed by Defendants' decision to move for dismissal under Rule 12(b)(1) without at least alternatively arguing that the case should be dismissed on the same grounds under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  The proper characterization of a motion to dismiss is not without legal consequences. "[T]he standard of Rule 12(b)(1) . . . while similar to the standard of Rule 12(b)(6), permits the court to consider a broader range of materials in resolving the motion." *Williams v. Wynne*, 533 F.3d 360, 365 n.2 (5th Cir. 2008) (citing *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986)).  However, in our analysis of this appeal, we need not determine the proper characterization of the motion or the propriety of many of the attached documents.  This is because our consideration of the LOGCAP III Contract excerpt is permitted by the stricter standard of Rule 12(b)(6), *see Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), as is our discussion of the LOGCAP regulations, *see Poindexter v. United States*, 777 F.2d 231, 236 (5th Cir. 1985); *see also Lane v. Halliburton*, 529 F.3d 548, 554 (5th Cir. 2008) (describing the LOGCAP regulations).  The remaining attached documents are unnecessary to our disposition, and we accordingly do not address whether they are properly considered.

[6] As a rule, "[d]istrict courts should state for the record the reasons for denying immunity." *Morin v. Caire*, 77 F.3d 116, 119 n.3 (5th Cir. 1996).

No. 09-20441

decision or certify the decision for interlocutory appeal under 28 U.S.C. § 1292(b).[7]  Before any briefs had been filed, Martin filed a motion before this court to dismiss the appeal as interlocutory; that motion was carried with the case.  The district court ordered further proceedings stayed pending the outcome of this appeal.

## II.  DISCUSSION

Before we can proceed to the merits of this appeal, we must examine whether we have jurisdiction to do so.  We have jurisdiction to determine our own jurisdiction.  *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009) (citing *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 268 (5th Cir. 2007)).  As the appellants, Defendants bear the burden of establishing our appellate jurisdiction.  *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 289 (5th Cir. 2000).

Our appellate jurisdiction is ordinarily limited to "final decisions of the district courts of the United States."  28 U.S.C. § 1291.  "For purposes of § 1291, a final judgment is normally deemed not to have occurred until there has been a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Henry*, 566 F.3d at 171 (alterations and internal quotation marks omitted) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989)).  In addition to our jurisdiction

---

[7] Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292(b).

No. 09-20441

over appeals from final decisions, we have statutory jurisdiction over appeals from certain interlocutory orders and decrees under § 1292(a), but neither party urges the application of that provision.  Prospective appellants who seek to appeal interlocutory orders that do not qualify under § 1292(a) are ordinarily limited to the certification procedure of § 1292(b); as noted above, that procedure was not followed here.  Thus, our jurisdiction must exist, if at all, under § 1291.

Defendants urge that the collateral order doctrine recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), supports jurisdiction.[8] "The collateral order doctrine is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Cohen*, 337 U.S. at 546).  "[T]he collateral order doctrine accommodates a 'small class' of rulings, not concluding the litigation, but conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Behrens v. Pelletier*, 516 U.S 299, 305 (1996)).  "The claims are 'too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Id.* (quoting *Cohen*, 337 U.S. at 546).  The Supreme Court, in describing the requirements of the collateral order doctrine, has emphasized the doctrine's limited application:

> The requirements for collateral order appeal have been distilled down to three conditions: that an order [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.  The conditions are stringent, and unless they are kept so, the underlying doctrine will overpower the substantial finality interests § 1291 is meant to further: judicial efficiency, for example, and the sensible

---

[8] Indeed, Defendants' notice of appeal states that it "is based upon the collateral order doctrine" and does not refer to any other basis for appellate jurisdiction.

No. 09-20441

policy of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise.

Accordingly, we have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope. And we have meant what we have said; although the Court has been asked many times to expand the small class of collaterally appealable orders, we have instead kept it narrow and selective in its membership.

*Will*, 546 U.S. at 349–50 (citations and internal quotation marks omitted; alterations in original); *see also Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009) ("In applying *Cohen*'s collateral order doctrine, we have stressed that it must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.'" (quoting *Digital Equip.*, 511 U.S. at 868)).

The universe of orders from which collateral order review may be taken is relatively limited.[9] The Supreme Court has identified a handful of orders that are collaterally reviewable,[10] and we have allowed such review for others.[11]

---

[9] We note that the denial of a motion to dismiss under Rule 12 may be immediately appealable under the collateral order doctrine in appropriate cases. *See Behrens*, 516 U.S. at 307 ("*Mitchell* [*v. Forsyth*, 472 U.S. 511 (1985),] clearly establishes that an order rejecting the defense of qualified immunity at *either* the dismissal stage *or* the summary judgment stage is a 'final' judgment subject to immediate appeal.").

[10] These are orders denying: absolute immunity, *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982), qualified immunity under 42 U.S.C. § 1983, *Mitchell*, 472 U.S. at 530, a state's claim of Eleventh Amendment immunity, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993), a claim of Speech or Debate Clause immunity, *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979), and a criminal defendant's claim of double jeopardy, *Abney v. United States*, 431 U.S. 651, 660 (1977).

[11] Our cases have extended collateral order review to denials of: a defamation defendant's invocation of an anti-SLAPP statute, *Henry*, 566 F.3d at 181, immunity under Texas law for communications made during judicial, quasi-judicial, or legislative proceedings, *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999), Foreign Sovereign Immunities Act immunity, *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo Gen.*, 923 F.2d 380, 385 (5th Cir. 1991), and qualified immunity under Title VII, *Brown v. Tex. A & M Univ.*, 804 F.2d 327, 332 (5th Cir. 1986).

Defendants have seized upon the fact that such orders typically involve "denials of various forms of immunity." *Henry*, 566 F.3d at 177. However, the forms of immunity that may be vindicated on appeal at an early stage through collateral order review are those that involve "not simply a right to prevail, but a right not to be tried." *Id.* Thus, the relevant inquiry in determining whether an "immunity" is subject to immediate appeal under the collateral order doctrine is whether the asserted immunity is from suit or merely from liability. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) ("The critical question . . . is whether 'the essence' of the claimed right is a right not to stand trial." (quoting *Mitchell*, 472 U.S. at 525)); *Henry*, 566 F.3d at 178 ("'There is a crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges. A right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur.'" (quoting *Midland Asphalt*, 489 U.S. at 801)). Accordingly, the Supreme Court has warned against generalizing from orders that are recognized as immediately appealable under the collateral order doctrine because almost any right can be characterized as a right not to be confronted with the burdens of trial. *Will*, 546 U.S. at 350–51; *Swint v. Chambers County Comm'n*, 514 U.S. 35, 43 (1995). Instead, we proceed on a categorical basis, looking only at whether "the class of claims, taken as a whole, can be vindicated by other means" than immediate appeal. *Mohawk Indus.*, 130 S. Ct. at 605.

We must therefore examine each of the rights Defendants asserted before the district court and now seek to appeal to determine whether the district court's denial of that claimed right is a collateral order that Defendants may immediately appeal. In undertaking this jurisdictional analysis, we do not explore the underlying merits of any of the claims Defendants press on appeal.

No. 09-20441

## A.    Official Immunity

Defendants first claim that we have jurisdiction to review the denial of their official immunity defense under *Westfall v. Erwin*, 484 U.S. 292 (1988). In *Houston Community Hospital*, we considered whether such a denial constituted a collateral order. We concluded that "[w]hile a denial of official immunity is an appealable order, the claim of immunity must be 'substantial' to justify an appellate court's collateral order review." *Houston Cmty. Hosp.*, 481 F.3d at 268–69 (footnote omitted). To be "substantial," such a claim must be more than "merely 'colorable.'" *Id.* at 269 n.11.

As originally articulated, the *Westfall* defense provided that "absolute immunity from state-law tort actions should be available only when the conduct of federal officials is within the scope of their official duties *and* the conduct is discretionary in nature." *Westfall*, 484 U.S. at 297–98. Shortly after the *Westfall* decision, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, 102 Stat. 4563 (1988), one effect of which was to eliminate the requirement that the acts of federal officials be discretionary. *See* 28 U.S.C. § 2679(d)(1); *Houston Cmty. Hosp.*, 481 F.3d at 269. However, non-governmental entities—such as Defendants—that seek the protection afforded by the *Westfall* defense remain subject to the requirement that their acts be discretionary. *Houston Cmty. Hosp.*, 481 F.3d at 269. "[B]y 'discretionary,' it is evident in context that the [Supreme] Court meant activities that involve 'policy-making work for the United States Government.'" *NF Indus., Inc. v. Exp.–Imp. Bank of U.S.*, 846 F.2d 998, 1001 (5th Cir. 1988) (per curiam) (quoting *Westfall*, 484 U.S. at 299). Therefore, to establish our appellate jurisdiction over the denial of their asserted *Westfall* defense, Defendants must make a substantial showing that their allegedly tortious conduct was within the scope of their official duties and was discretionary in the sense that it involved governmental policy-making activities.

No. 09-20441

We cannot conclude, based on the limited record before us, that Defendants have made a substantial showing of entitlement to official immunity under *Westfall*. As discussed above, the LOGCAP regulations expressly provide that "[c]ontractors will not be used to perform inherently governmental functions." Army Reg. 700–137, at 3–2(d)(8). The term "governmental function" is defined as "[a] function which is so intimately related to the public interest as to mandate performance by Government employees. These functions include those activities which require *either the exercise of discretion* in applying Government authority *or the use of value judgements* in making decisions for the Government." *Id.* at Glossary § I (emphases added). This language expressly precludes Defendants from engaging in discretionary conduct, a prerequisite for entitlement to the *Westfall* defense.[12] Defendants cite several actions that they performed—allowing Tolfree's truck to return to LSA Anaconda without coordinating its return and training and supervising employees—but these do not rise to the level of being "activities that involve 'policy-making work for the United States Government.'" *NF Indus.*, 846 F.2d at 1001 (quoting *Westfall*, 484 U.S. at 299). We therefore conclude that we lack jurisdiction over the district court's denial of *Westfall* immunity.[13]

## B.    Derivative Sovereign Immunity

Defendants also claim that the denial of their claim of derivative sovereign

---

[12] In light of our conclusion that, for determining our appellate jurisdiction, Defendants have failed to set forth a substantial claim of official immunity under the discretion prong of *Westfall*, we do not address the other prong—whether Defendants were acting within the scope of their official duties.

[13] Our analysis is necessarily hampered by the absence from the record of the substantive portions of the LOGCAP III Contract and Task Order 139, as well as any other documents that might prove relevant. Accordingly, we limit our holding on this aspect of the appeal to a determination that Defendants have failed to make the requisite showing on the record before us, and we do not foreclose the possibility that Defendants may ultimately demonstrate that they acted with the requisite discretion to warrant application of the *Westfall* defense.

11

immunity "under theories of agency and state action" is an immediately appealable collateral order.[14]   In *Houston Community Hospital*, a private insurance carrier under contract with the Government to provide health benefit plans to federal employees sought to appeal the denial of its claim of derivative sovereign immunity.  481 F.3d at 267–68. We held that "a denial of [derivative] sovereign immunity is not subject to immediate review under the collateral order doctrine."  *Id.* at 280.  We are bound by this precedent.  *See United States v. Rose*, 587 F.3d 695, 705 (2009) (per curiam).  Accordingly, we lack jurisdiction to review the district court's denial of Defendants' claim of derivative sovereign immunity.

## C.    Defense Production Act

The district court's order also denied Defendants' claim of immunity under § 707 of the DPA, 50 U.S.C. app. § 2157.  The DPA authorizes the executive to require the acceptance and priority performance of designated contracts, *id.* § 2071(a), under threat of criminal penalties, *id.* § 2073.  Section 707 provides:

> No person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to [the DPA], notwithstanding that any such rule, regulation, or order shall thereafter be declared by judicial or other competent authority to be invalid. . . .

---

[14] Defendants' agency theory is based primarily on *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940).  That case held that landowners on the Missouri River whose land was injured by a dam project could not seek damages from a governmental contractor engaged to build the dam where the contractor did not exceed its validly conferred authority.  *Id.* at 21.

Defendants' state action theory seeks to combine *Dobyns v. E-Systems, Inc.*, 667 F.2d 1219 (5th Cir. 1982), and *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007).  In *Dobyns*, we concluded that a governmental contractor operating an early warning surveillance station in the Sinai Peninsula was a state actor subject to constitutional limitations on its behavior.  667 F.2d at 1221–22.  In *McMahon*, the Eleventh Circuit considered the possibility that "private contractor agents may be entitled to some form of immunity that protects their making or executing sensitive military judgments . . . ." 502 F.3d at 1351.  The *McMahon* court ultimately declined to determine whether such an immunity existed.  *Id.* at 1355–56.

No. 09-20441

*Id.* § 2157.  The Supreme Court has noted that § 707 "plainly provides immunity . . . [b]y expressly providing a defense to liability . . . ."  *Hercules, Inc. v. United States*, 516 U.S. 417, 429 (1996).  However, an immunity that merely provides a defense to liability cannot justify collateral order review.  *See Van Cauwenberghe*, 486 U.S. at 524 ("The critical question . . . is whether 'the essence' of the claimed right is a right not to stand trial." (quoting *Mitchell*, 472 U.S. at 525)); *Henry*, 566 F.3d at 178.[15]  Defendants' claim of immunity under § 707 thus fails *Cohen*'s unreviewability prong and "can be adequately vindicated," *Mohawk Indus.*, 130 S. Ct. at 605, on review from a final judgment under § 1291 or using the certification procedure for interlocutory appeal available under § 1292(b).

**D.   Combatant Activities Exception**

Finally, Defendants argue that we have jurisdiction to review the denial of their claim that Martin's causes of action are preempted by the combatant activities exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(j). The FTCA abrogates the Government's sovereign immunity for torts committed by its employees in circumstances where, if the Government were a private person, the Government would be liable under state law.  28 U.S.C. §§ 1346(b)(1) & 2674; *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir. 2009).  The Government has not, however, abrogated its sovereign immunity for torts committed by governmental contractors and their employees.  28 U.S.C. § 2671.

---

[15] As we stated in *Henry*:

The Supreme Court has warned, however, that one must be careful not to play word games with the concept of a right not to be tried, for virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a right not to stand trial.  There is a crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges.  A right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur.

566 F.3d at 178 (citations, alterations, and internal quotation marks omitted).

13

The combatant activities exception withdraws, in the case of a suit against the Government, both the jurisdictional grant and the abrogation of sovereign immunity for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." *Id.* § 2680(j).

Defendants argue that the combatant activities exception, which they acknowledge "does not apply directly to government contractors," should be read as preempting Martin's state law claims. They cite the decisions in *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), *Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992), and *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486 (C.D. Cal 1993), as establishing both that state law causes of action against governmental contractors may be preempted by the combatant activities exception and that Martin's state law causes of action should be preempted here. As with Defendants' other defenses, the claim of preemption was denied by the district court, and Defendants seek immediate appeal of that denial under the collateral order doctrine.

While the denial of a claim of preemption by the combatant activities exception may be reviewed on appeal from a final judgment under § 1291 or, in an appropriate case, on interlocutory appeal under § 1292(b), it may not be immediately appealed under the collateral order doctrine. We have previously determined that the denial of a claim that state law is preempted by federal law is not an order that may be immediately appealed under the collateral order doctrine. *See Houston Cmty. Hosp.*, 481 F.3d at 268, 280 (finding no appellate jurisdiction over an uncertified denial of a governmental contractor's summary judgment motion that asserted preemption of a hospital's action by the Federal Employee Health Benefits Act).[16] This approach is reflected in the Eleventh

---

[16] We are not alone in treating denials of claims of preemption as not subject to immediate review under the collateral order doctrine. *See, e.g.*, *Joy Global, Inc. v. Wis. Dep't of Workforce Dev. (In re Joy Global, Inc.)*, 257 F. App'x 539, 541 (3d Cir. 2007) (holding that

14

Circuit's *McMahon* decision, which held that the denial of a contractor's claim of preemption under the combatant activities exception is not an immediately appealable collateral order. *McMahon*, 502 F.3d at 1366 (holding that the court lacked appellate jurisdiction over an uncertified denial of a Rule 12(b)(6) motion to dismiss that asserted preemption by the combatant activities exception).

We conclude, like the Eleventh Circuit in *McMahon*, that the combatant activities exception is not subject to a *sui generis* exemption from the ordinary jurisdictional requirements for denials of preemption claims. This conclusion follows from *Saleh*, on which Defendants rely heavily in pressing their preemption argument. In *Saleh*, Iraqi nationals who had been imprisoned at the Abu Ghraib military prison during the war in Iraq brought claims against two private military contractors providing interrogation and translation services, respectively, asserting that they had been abused by employees of the contractors. *Id.* at 1–2. The district court in that case initially denied the contractors' Rule 12 motion to dismiss based on combatant activities preemption because the contractors "ha[d] not produced sufficient factual support to justify [the doctrine's] application." *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 17 (D.D.C. 2005) ("*Ibrahim I*"). The district court ordered limited discovery

---

the denial of a claim that state law claims were preempted by the Employee Retirement Income Security Act (ERISA) was not a collateral order); *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1359 (Fed. Cir. 2003) (stating that "Section 1292(b) more appropriately addresses the appeal of" claims that state law is preempted by the federal patent laws (citing *Taylor v. PPG Indus., Inc.*, 256 F.3d 1315 (Fed. Cir. 2001))); *Mathis v. Henderson*, 243 F.3d 446, 448–49 (8th Cir. 2001) (noting that a claim that Title VII preempted FTCA claims does not provide jurisdiction but accepting pendent appellate jurisdiction where the district court's refusal to accept an FTCA certification provided independent jurisdiction and turned on the same issues); *Jordan v. Avco Fin. Servs. of Ga., Inc.*, 117 F.3d 1254, 1257 (11th Cir. 1997) (dismissing an interlocutory appeal of denial of a motion to dismiss after concluding that "the [McCarran–Ferguson] Act is a statute of preemption rather than one granting immunity"); *Wood v. United States*, 995 F.2d 1122, 1130 (1st Cir. 1993) (en banc) (holding that "interlocutory appeal did not lie from the district court's decision" on "whether or not federal law preempted certain of Wood's state law claims"), *abrogated on other grounds by Osborn v. Haley*, 549 U.S. 225 (2007).

No. 09-20441

addressing a number of questions:

> Other than Titan's Statement of Work, defendants[ ] have produced
> nothing beyond limited assertions to meet their factual burden of
> showing that they are entitled to [preemption].  More information
> is needed on what exactly defendants' employees were doing in Iraq.
> What were their contractual responsibilities?  To whom did they
> report?  How were they supervised?  What were the structures of
> command and control?

*Id.* at 19.  Following a year of discovery, the contractors moved for summary judgment, again asserting preemption.  *Ibrahim v. Titan Corp.*, 556 F. Supp. 2d 1 (D.D.C. 2007) ("*Ibrahim II*"), *aff'd in part, rev'd in part*, *Saleh*, 580 F.3d 1.  The district court undertook a fact-intensive analysis and found that the translators had proven that they were entitled to preemption as a matter of law, *id.* at 10, but that the interrogators had not conclusively demonstrated such an entitlement, *id.* at 11.  On appeal, the Court of Appeals for the District of Columbia Circuit reversed in part, holding that the claims against both contractors were preempted by the combatant activities exception.  *Saleh*, 580 F.3d at 7.  However, the court's analysis was—like the district court's—reliant upon the facts obtained through the discovery process.  *See id.* at 4 ("We think the district judge properly focused on the chain of command and the degree of integration that, in fact, existed between the military and both contractors' employees . . . ."); *id.* at 10 (considering as significant the military's retention of "command authority [and] operational control over contractors").[17]

Here, by contrast, we are confronted with circumstances comparable to those present in *Ibrahim I*—a record too scant to permit an informed decision about the applicability of preemption under the combatant activities

---

[17] In discussing *Koohi*, *Bentzlin*, *Ibrahim I*, *Ibrahim II*, and *Saleh*, we express neither agreement nor disagreement with the tests or facts found significant by the respective courts that decided those cases, as our holding renders it unnecessary for us to decide what must be shown to support preemption under the combatant activities exception.

exception—that prompted the district court in that case to order limited discovery and development of the factual record. Instructively, the two appeals in *Saleh* reached the D.C. Circuit using the normal machinery of §§ 1291 and 1292(b)—the plaintiffs whose claims were dismissed on summary judgment against one defendant appealed from a final judgment under § 1291, while the contractor whose summary judgment motion was denied obtained certification for interlocutory appeal under § 1292(b). *Id.* We agree that an appeal from an appropriately developed and supported interlocutory order denying a claim of preemption under the combatant activities exception may be handled using the certification procedure available under § 1292(b). *See id.* at 4 (accepting jurisdiction of certified § 1292(b) appeal of order denying claim of combatant activities preemption); *see also McMahon*, 502 F.3d at 1366; *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 792 (5th Cir. 2008) (accepting interlocutory appeal, under § 1292(b), over denial of claims of preemption under the doctrine of *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), and by provisions of ERISA). That certification procedure was not followed in multiple respects, and we lack jurisdiction to review Defendants' claim that Martin's state law causes of action are preempted.

## E.    Further Development and Certification

We recognize that many of the immunity and preemption defenses asserted by the Defendants facially satisfy the terms for certification under § 1292(b) in that they "involve[] a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Because the basis for many of these defenses is a respect for the interests of the Government in military matters, district courts should take care to develop and resolve such defenses at an early stage while avoiding, to the extent possible, any interference with military prerogatives. Thorough

17

consideration should be given to limiting discovery initially to such defenses. *See Saleh*, 580 F.3d at 4 (describing the scope of limited discovery under the combatant activities exception). Consideration should also be given to freely certifying orders denying such defenses where the law is unsettled but, after refinement on appeal, might warrant dismissing plaintiffs' claims—provided of course that the record has been developed adequately so that an informed decision can be made about the contours of these defenses. *See Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961) ("[Section 1292(b) was enacted] to give the appellate machinery . . . a considerable flexibility . . . so that within reasonable limits disadvantages of piecemeal and final judgment appeals might both be avoided.").

## F.    Pendent Appellate Jurisdiction

Defendants claim that because they have "established that the District Court's denial of *at least* one of its asserted defenses is a collateral order, [we] ha[ve] jurisdiction to review all of [Defendant's] asserted defenses" under the pendent appellate jurisdiction doctrine. We disagree that Defendants have established jurisdiction over at least one asserted defense, and we consequently do not assess the propriety of exercising pendent appellate jurisdiction here.

In a similar vein, Martin asserts that only Kellogg Brown & Root is a signatory to the LOGCAP III Contract and that the remaining Defendants are not entitled to immunity or collateral order review of the denial of that immunity. In light of our determination that we lack jurisdiction over any of the claims, we need not address this contention further.

## III.  CONCLUSION

Defendants have failed to carry their burden of establishing our jurisdiction over any aspect of this interlocutory appeal. Accordingly, we GRANT Martin's motion to dismiss and DISMISS the appeal for lack of subject matter jurisdiction. In doing so, we express no opinion on the merits of

No. 09-20441

Defendants' claims.

The motion to dismiss is GRANTED; the appeal is DISMISSED. Costs shall be borne by Defendants.