ACCEPTED
04-14-00752-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/14/2015 12:45:47 AM
KEITH HOTTLE
CLERK

## NO. 04-14-00752-CV

## IN THE COURT OF APPEALS
## FOR THE FOURTH DISTRICT OF TEXAS
## AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
2/17/2015 12:00:00 AM
KEITH E. HOTTLE
Clerk

## HUMANA INSURANCE COMPANY,
## APPELLANT,

## V.

## DOLORES MUELLER,
## APPELLEE.

### On Appeal from the County Court at Law No. 3,
### Bexar County, Texas

### BRIEF OF APPELLEE DOLORES MUELLER

**Stephen G. Nagle**
**State Bar No. 14779400**
**sgnagle@lawyernagle.com**
**1002 West Avenue, Suite 100**
**Austin, TX 78701**
**(512) 480-0505 - Telephone**
**(512) 480-0571 - Facsimile**
**ATTORNEY FOR APPELLEE DOLORES MUELLER**

*Oral Argument Not Requested*

Humana vs. Mueller, Brief of Appellee

## <u>IDENTITY OF PARTIES AND COUNSEL</u>

HUMANA Insurance Company

Appellant

Counsel for Appellant

Lisa P. Alcantar
State Bar No. 24069284
lalcantar@prdg.com
Richard G. Foster
State Bar No. 07295100
rfoster@prdg.com
Porter, Rogers, Dahlman & Gordon, P.C.
745 E. Mulberry Avenue, Suite 450
San Antonio, Texas 78212
Telephone: (210) 736-3900
Facsimile: (210) 736-1992

Appellee

Dolores Mueller
Stephen G. Nagle

Counsel for Appellee

State Bar No. 14779400
sgnagle@lawyernagle.com
1002 West Avenue, Suite 100
Austin, TX 78701
(512) 480-0505 - Telephone
(512) 480-0571 - Facsimile

# TABLE OF CONTENTS
..............................................................................

TABLE OF AUTHORITIES .            iii

STATEMENT OF THE CASE. ....................................................... 1

ISSUES PRESENTED. ............................................................. 2

I.      STATEMENT OF FACTS. ........................................................ 2

II.     SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    ARGUMENTS AND AUTHORITIES. ........................................ 7

      A. This Court has no jurisdiction over an interlocutory appeal by HUMANA because it is neither a government agency nor a government employee.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B. HUMANA has no derivative immunity from either suit or liability for claims arising out of the administration of the SAHA Health Benefits Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C. HUMANA has no derivative immunity from either suit or liability for bad faith claims handling. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      D. HUMANA is not exempt from the Insurance Code and has direct liability for claims arising out of the administration of the SAHA Health Benefits Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.    CONCLUSION................................................................. 18

PRAYER.......................................................................... 18

CERTIFICATE OF COMPLIANCE................................................ 20

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**CASES**

*Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320 (Tex. 2006) .. . . . . . . . . . . . . 12

*Cen-Tex Child Care, Inc. v Johnson*, 339 S.W.3d 734 (Tex. App.—Fort Worth 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) . . . . . . . . . . . . . . . . . 15

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) . . . . . . . . . . . . . . 13

*City of Rockwall v. Houston*, 246 S.W.3d 621 (Tex. 2008) . . . . . . . . . . . . . . . . 10

*Forrester v. White*, 484 U.S. 219 (1988) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Foster v. Teacher Ret. Sys.*, 273 S.W.3d 883 (Tex. App.—Austin 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Garza v. Blue Cross & Blue Shield of Tex.*, Cause No. 03-98-00706-CV; 1997 WL 1078697 (Tex. App.—Austin Dec. 2, 1999, no pet.) (mem. op., not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hosner v. DeYoung*, 1 Tex. 764 (1847) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Klein v. Hernandez*, 315 S.W.3d 1 (Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Methodist Hospitals of Dallas v. Miller*, No. 05-11-00955-CV; 2012 Tex. App. LEXIS 5455: 2012 WL 2782820 (Tex. App.—Dallas July 10, 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*NF Indust. v. Export-Import Bank*, 846 F.2d 998 (5th Cir. 1988) . . . . . . . . . . . 14

*Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007) . . . . . . . . . . . 7

*Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006) . . . . . . . . . . . . . . . . . 15, 16

*Walker v. Whatley*, 318 S.W.3d 541 (Tex. App.—Beaumont 2010, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


**STATUTES**

TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (West 2015) . . . . . . . . . . . 6, 7, 8, 9

TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2) (West 2015) . . . . . . . . . . . . . 8

TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215 (West 2015) . . . . . . . . . . . . . 15

TEX. CIV. PRAC. & REM. CODE ANN. § 311.023 (West 2015) . . . . . . . . . . . . . 10

TEX. GOVT. CODE ANN. § 311.026 (West 2015) . . . . . . . . . . . . . . . . . . . . 17

TEX. GOVT. CODE ANN. § 2259.037 (West 2015) . . . . . . . . . . . . . . . . . . . . . 16, 17

TEX. H. & S. CODE ANN. § 312.007(a) (West 2015) . . . . . . . . . . . . . . . . . . . . . . 9

TEX. INS. CODE ANN. § 541.002 (West 2015) . . . . . . . . . . . . . . . . . . . . . . . . 16

TEX. INS. CODE ANN. § 4151.001 (West 2015) . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. INS. CODE ANN. § 4151.002 (West 2015) . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. INS. CODE ANN. § 4151.006 (West 2015) . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. LOC. GOVT. CODE ANN. Ch. 172 (West 2015) . . . . . . . . . . . . . . . 11, 12, 17

TEX. LOC. GOVT. CODE ANN. § 172.002 (West 2015) . . . . . . . . . . . . . . . . . . . 12

TEX. LOC. GOVT. CODE ANN. Ch. 271 (West 2015) . . . . . . . . . . . . . . . . . . . . . . 6

TEX. LOC. GOVT. CODE ANN. § 271.152 (West 2015) . . . . . . . . . . . . . . . . . . . 12

NO. 04-14-00752-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO


HUMANA INSURANCE COMPANY,

APPELLANT

V.

DOLORES MUELLER,

APPELLEE


On Appeal from the County Court at Law No. 3,
Bexar County, Texas


BRIEF OF APPELLEE DOLORES MUELLER


STATEMENT OF THE CASE

Dolores Mueller works for the San Antonio Housing Authority ("SAHA"), a local governmental entity that runs subsidized housing programs within the City of San Antonio. Appellant HUMANA administers the health insurance benefit program which SAHA created for its employees. HUMANA denied certain claims for health benefits presented by Mueller. HUMANA violated the Insurance Code by making the claims decision outside the terms of the policy, relying on undisclosed and unreasonable limitations on the medical procedures it would cover.

## PROCEDURAL HISTORY

Mueller filed her Original Petition against SAHA and HUMANA on March 30, 2012. (CR 11-15). It sought damages for denial of claims benefits, breach of contract, negligence, and violation of provisions of the Texas Insurance Code. In the course of discovery, Ms. Mueller found out, for the first time, that HUMANA had gone outside the terms of the health benefits policy in order to deny her claims. As one consequence of that discovery, Ms. Mueller non-suited her claims against SAHA, and elected to proceed solely against HUMANA. (CR 43-49).

Plaintiff's Third Amended Petition was in place at the time when HUMANA's Plea to the Jurisdiction was heard, on September 19, 2014. (CR 279-285). The Plea (CR 55-66) claimed sovereign immunity for HUMANA's acts administering the insurance claims process for SAHA and sought dismissal of the lawsuit. The Bexar County Court at Law, the Honorable Tina Torres presiding, denied the plea to the jurisdiction on October 9, 2014. (CR 295). This appeal was timely filed.

## ISSUES PRESENTED

Does this Court have jurisdiction of the appeal of an interlocutory Order denying a Plea to the Jurisdiction, which is brought by an independent contractor to a political subdivision of the state?

Has HUMANA established that it is entitled to sovereign or official immunity for its claims handling conduct as a Third Party Administrator?

# I. FACTUAL BACKGROUND

Since this is an interlocutory appeal from an Order denying a Plea to the Jurisdiction of the court below, the allegations of Plaintiff's latest Petition are accepted as true for purposes of this appeal. Plaintiff's Third Amended Petition in this case was the live pleading at the time when the Plea to the Jurisdiction was heard, and contains the following:

In 2010, DOLORES MUELLER developed back pain and other symptoms that failed to respond to non-surgical treatment. Her treating doctors recommended a "minimally invasive" spinal decompression surgery. Two different neurosurgeons submitted claims to HUMANA for pre-certification approval of this surgery.

HUMANA denied pre-certification, and, by a series of at least six letters spanning the period March 31, 2010, through October 2, 2010, denied coverage for the proposed surgery. In its denials, HUMANA relied upon the policy language excluding "Any medical treatment, procedure, drug, biological product or device which is experimental, investigational or for research purposes . . ."

At the time and place when HUMANA denied pre-certification of the proposed thoracic spinal decompression surgery, the proposed procedure was not, and could not reasonably have been considered, experimental, investigational or for research purposes either generally or within the meaning of [the policy] definition.

At the same time, HUMANA had [an internal] "Spinal Decompression Surgery

---

Medical Coverage Policy" in place. HUMANA was actually using [this internal policy] to determine that the proposed surgery was "experimental." The internal policy was not a part of the SAHA health insurance document that covered MUELLER.

HUMANA failed to communicate the content of this Policy, either to the doctors requesting pre-certification or to MUELLER. HUMANA failed to communicate that, under this policy, HUMANA would have approved and paid for a standard ("open" as opposed to minimally invasive) surgery. This surgery is a more invasive, more painful, less up-to-date surgical procedure which would likely have had the same effect as the surgery for which HUMANA denied coverage, but would have left MUELLER with permanent limitations of movement in her spine.

HUMANA also failed to communicate that, under this policy, HUMANA would have approved and paid for a traditional fusion.

The following does not appear in the Petition, but is based upon the language of the agreement between SAHA and HUMANA. While the agreement between SAHA and HUMANA provides for indemnity to HUMANA in connection with HUMANA's exercise of its powers and duties under the Agreement, the agreement excepts damages that are attributable to fraud, willful misconduct, or intentional disregard on the part of HUMANA, or HUMANA's failure to abide by the Agreement. (CR 80). SAHA remains liable for plan benefits awarded to a

participant. The action Mueller has brought against HUMANA is for extra-contractual damages which have resulted from HUMANA's bad faith claims handling conduct. HUMANA's conduct is clearly outside the scope of its delegated authority.

## II. SUMMARY OF THE ARGUMENT

In order to create jurisdiction in this Court, under 51.014 of the TEX. CIV. PRAC. & REM. CODE, this appeal must be based upon an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. HUMANA is neither a local government agency nor an employee of such an entity, and therefore this court has no authority to hear this appeal.

Sovereign immunity is a judicially created doctrine. Sovereign immunity has been waived for SAHA for both immunity from suit and liability for claims where a suit is brought by its employees seeking to resolve disputes over insurance benefits provided by SAHA. Immunity is waived because these are suits over proprietary functions by a city or its affiliated agency. Immunity is waived, as well, because these suits arise out of contract claims. Immunity for those claims is specifically waived Ch. 271, TEX. LOC. GOVT. CODE.

Even if the functions that HUMANA performs might be cloaked in immunity if done in good faith, by an employee of a SAHA, HUMANA does not have immunity for its claims handling actions in this case, because HUMANA did not act in good faith. Further, specific provisions of the Texas Insurance Code govern actors such

as HUMANA who are in the "business of insurance," and acting as Third Party Administrators. Even if an employee of the State might be immune, there is no immunity for private, Third Party Administrators whose conduct is specifically regulated by statute.

While the agreement between SAHA and HUMANA provides for indemnity to HUMANA in connection with HUMANA's exercise of its powers and duties under the Agreement, the agreement excepts damages that are attributable to fraud, willful misconduct, or intentional disregard on the part of HUMANA, or HUMANA's failure to abide by the Agreement. SAHA remains liable for plan benefits awarded to a participant, but the action Mueller has brought against HUMANA is for extra-contractual damages which have resulted from HUMANA's bad faith claims handling conduct. HUMANA's conduct is clearly outside the scope of its delegated authority.

### III.  ARGUMENT AND AUTHORITIES

### A.  THIS APPEAL MUST BE DISMISSED FOR LACK OF JURISDICTION

This court has "jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction." *Texas A. & M. Univ. System v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

This appeal has been taken under Section 51.014 of the TEX. CIV. PRAC. & REM. CODE. Section 51.014(a)(5) provides that a "person" may appeal from an interlocutory order of a district court, county court at law, or county court denying a

motion for summary judgment "that is based on an assertion of immunity by **an individual who is an officer or employee of the state or a political subdivision of the state**." [Emphasis added.]

Accordingly, this Court lacks jurisdiction over interlocutory appeals taken by any person who is not an officer or employee of a qualifying government entity. TEX. CIV. PRAC. & REM. CODE Sec. 101.001(2) defines "employee" to mean "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but **does not include an independent contractor**, an agent or employee of an independent contractor . . . "

In *Cen-Tex Child Care, Inc. v Johnson*, 339 S.W.3d 734 (Tex. App.—Fort Worth 2011, no pet.), Cen-Tex was a private entity working under contract for a state agency. It provided foster home services pursuant to a contract with the Department of Family and Protective Services. After a child died while in a Cen-Tex foster home, Johnson filed a wrongful death lawsuit against Cen-Tex and others. Cen-Tex moved to dismiss, on the ground that it had immunity. The Court of Appeals determined that it lacked jurisdiction under 51.014(a)(5), because Cen-Texas was not an officer or employee of the State or any political subdivision of the State, but an independent contractor.

Similarly, in *Methodist Hospitals of Dallas v. Miller*, No. 05-11-00955-CV; 2012 Tex. App. LEXIS 5455; 2012 WL 2782820 (Tex. App.—Dallas July 10, 2012,

no pet.), several police officers who were employees of the Methodist Hospital System appealed the denial of their Motion for Summary Judgment on the ground of immunity. Their appeal was dismissed for lack of jurisdiction, because they failed to demonstrate that they were employees of a state or local government entity.

In *Walker v. Whatley*, 318 S.W.3d 541 (Tex. App.—Beaumont 2010, pet. denied), a private attorney was sued for actions he had taken as court-appointed guardian of a person and estate. He sought immunity because of his appointment by the Court. The appellate Court ruled it did not have jurisdiction under § 51.014(a)(5)), because the guardian was not an agent of the State.

The present case is different from *Klein v. Hernandez*, 315 S.W.3d 1 (Tex. 2010). In that case, Klein, was a student at a private medical school who worked as a resident physician at a public hospital. The Texas Supreme Court found that, pursuant to Section 312.007(a) of the TEX. H. & S. CODE, Klein was a state employee for purposes of his work at the public hospital. The section, entitled "Individual Liability," provides: A . . . resident . . . employee of a medical . . . unit . . . is an employee of a state agency . . . for purposes of determining the liability, if any, of the person for the person's acts or omissions while engaged in the coordinated or cooperative activities of the unit, school, or entity." He, therefore, was authorized to take an interlocutory appeal of the denial of an immunity motion under 51.014(a)(5).

There is no similar statute that would give comfort or immunity to HUMANA.

---

**B.** **HUMANA HAS NO DERIVATIVE IMMUNITY FROM EITHER SUIT OR LIABILITY FOR CLAIMS ARISING OUT OF THE ADMINISTRATION OF THE SAHA HEALTH BENEFITS PROGRAM.**

Sovereign immunity, in Texas, was historically a judicially created doctrine. It was first recognized in 1847. The Texas Supreme Court held, in *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847), that no State can be sued in her own court without her consent and then only in the manner indicated by that consent ...” Consent has been found in a number of ways. The most obvious one is a statutory waiver, but it has not been the only one.

HUMANA essentially contends that SAHA in entirely immune from suit over claims matters, and that it has immunity that is derivative of SAHA's immunity. However, if SAHA were completely immune from suits for insurance benefits, benefits which it promised and contracted for with its employees, then Plaintiff would have no remedy at all for denial of her claims for benefits under the health benefits policy. That is an absurd result. Statutory construction rules provide that an absurd result should be avoided. TEX. CIV. PRAC. & REM. CODE, Sec. 311.023. Courts must avoid construction that leads to absurd results. *City of Rockwall v. Houston*, 246 S.W.3d 621, 625-26 (Tex. 2008).

In order for derivative immunity to apply, there must first be immunity on the part of the government entity. Local Government entities are empowered to provide

health and other insurance benefits to their employees by the Texas Political Subdivisions Uniform Group Benefits Program, established in Ch. 172 of the TEX. LOC. GOVT. CODE.  It provides that:

> (a) A political subdivision . . . may provide health . . . coverage for political subdivision . . . . employees, . . . .
>
> (b) The types of coverage that may be provided include group health and accident, group dental, accidental death and dismemberment, and hospital, surgical, and medical expense.

There is no provision in that Code Chapter which clothes any entity in immunity for payment of benefits contracted for.

It is also true that there is no specific provision in Ch. 172 saying that a local government employee may sue, in the event of a dispute, for the benefits which a political subdivision creates.  Nonetheless, there can be no doubt that such a remedy exists.  There is a specific provision which waives immunity of SAHA for general contract claims.

> WAIVER OF IMMUNITY TO SUIT FOR CERTAIN CLAIMS. A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and

conditions of this subchapter.

TEX. LOC. GOVT. CODE Sec. 271.152.

The Texas Supreme Court has specifically held that "by enacting section 271.152, the Legislature intended to loosen the immunity bar so that all local government entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts." *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006) (internal quotations omitted). This authorizes a claim for benefits, a suit against SAHA.

If HUMANA has derivative immunity from suit for violations of the Insurance Code in this case, it would go against the policy enunciated in TEX. LOC. GOVT. CODE Ch. 172, which authorized the creation of the program that HUMANA administered.

Sec. 172.002. PURPOSE. The purpose of this chapter is to: . . .

(2) enable the political subdivisions to attract and retain competent and able employees by providing them with accident and health benefits coverages at least equal to those commonly provided in private industry;

If State, County and Municipal employees are not allowed the same remedies under the Insurance Code as employees in the private sector, they are not equal to those "provided in private industry."

HUMANA contends that it seeks sovereign immunity. However, what it actually seeks is the immunity that might apply to an individual employee who performed claims functions for a local government entity. That is "official" immunity. Official immunity applies only to (1) discretionary acts of individuals (2) within the scope of official duties for the state, (3) performed in good faith. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). HUMANA has specifically pleaded that it did not have discretion, but only acted to interpret the policy terms. Further, the specific allegations of Plaintiff are that the actions of HUMANA were not taken in good faith, because they are violations of the Texas Insurance Code.

Even if HUMANA is correct and SAHA has immunity from a lawsuit for benefits and for violations of the Insurance Code, that immunity does not transfer to HUMANA. *Garza v. Blue Cross & Blue Shield of Tex.*, Cause No. 03-98-00706-CV; 1997 WL 1078697 (Tex. App.—Austin Dec. 2, 1999, no pet.) (mem. op., not designated for publication). In *Garza*, the Plaintiff was an employee of the State of Texas. Through his employer, he purchased Accidental Death and Disability (AD&D) insurance coverage from Blue Cross and Blue Shield of Texas (BCBSTX). He was injured and lost the sight in one eye. BCBSTX denied the claim. Garza appealed, won at the administrative level, and then sued BCBSTX for violations of the Insurance Code.

The District Court granted Summary Judgment to BCBSTX on the ground of immunity. The Court of Appeals reversed. It wrote, concerning official immunity for a private actor, such as Blue Cross and Blue Shield:

> **[I]f the purposes of the [immunity] doctrine are not exposed to injury by reason of a particular function that might be pertinent, then the exception cannot apply.** [*emphasis added*.] See *Forrester v. White*, 484 U.S. 219, 227 (1988) ("immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches."). . . . See *NF Indust. v. Export-Import Bank*, 846 F.2d 998, 1000-01 (5th Cir. 1988) (Defendant "has made no showing here that its duties require the exercise of governmental policymaking as distinguished from insurance policy-writing.").

The present case is distinguishable from *Foster v. Teacher Retirement System*, 273 S.W.3d 883 (Tex. App. Austin 2008). First, Foster did not make claims that Aetna acted outside the contract or illegally. "Foster does not allege unlawful acts by Aetna or its employees, only that Aetna should have found her claims to be covered under the policy." Id. at 889. In contrast, Ms. Mueller's claims are based exclusively on the fact that HUMANA violated provisions of the Texas Insurance Code. Second, Foster sued a State agency, not a local government agency whose authority derives from a home rule city.

## C.    HUMANA HAS NO DERIVATIVE IMMUNITY FROM EITHER SUIT OR LIABILITY FOR BAD FAITH CLAIMS HANDLING.

Ms. Mueller's claim is not one for contract benefits. Rather, it is a claim that HUMANA, as the entity in charge of insurance benefits for SAHA, acted without authority and contrary to law - *ultra vires*. The Texas Supreme Court has held that there is no immunity for *ultra vires* acts, because they are outside the scope of the official's authority. *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). If HUMANA is acting in the stead of the individual who is the Plan Administrator for SAHA, then they may be sued just as he might have been sued, had he done the same.

In addition, the provision of insurance benefits is a proprietary function. Governmental functions are defined in TEX. CIV. PRAC. & REM. CODE SEC. 101.0215, which provides that the Tort Claims Act does not apply to the liability of a municipality for damages arising from its proprietary functions. Proprietary functions are those which a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality. The provision of insurance to employees of the a city or its affiliated entities is not listed in the statute. Therefore the provision of insurance is a proprietary function, and HUMANA has no immunity at all in this regard.

In *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006), the Texas Supreme Court recognized that cities have no immunity for tortious conduct related to a

proprietary function. Id. at 343. SAHA is a creation of the City of San Antonio, and therefore, logically, it also has no immunity for tortious conduct related to proprietary functions. The conduct for which Mueller seeks is tortious, in that it violates specific statutory guidelines.

**D.     HUMANA IS NOT EXEMPT FROM THE INSURANCE CODE AND HAS DIRECT LIABILITY FOR CLAIMS ARISING OUT OF THE ADMINISTRATION OF THE SAHA HEALTH BENEFITS PROGRAM.**

Plaintiff has sued under Chs. 541 and 542 of the Insurance Code. TEX. INS. CODE Sec. 541.002 defines "Person" as "an individual, corporation, association, . . . society, or other legal entity **engaged in the business of insurance** . . ." The chapter then goes on to define various unfair methods of competition and claims handling. Plaintiff has sued HUMANA as a person who has violated these provisions.

HUMANA contends that the Texas Insurance Code does not apply to the HUMANA's actions in this, because HUMANA was acting for a self-funded Plan created by a local government entity. HUMANA cites TEX. GOVT. CODE Sec. 2259.037. It provides that "The Insurance Code and other laws of this state relating to the provision or regulation of insurance do not apply to (1) an agreement entered into under this subchapter; or (2) the proceeds of public securities issued under this subchapter." However, the authority to provide Group Benefits Plans is not found in

this section, but in Ch. 172, discussed supra. Tex. Govt. Code Sec. 2259.037 merely creates another mechanism for accomplishing the end set out in Ch. 172, Tex. Loc. Govt. Code. Further, while a self-funded Plan might not be subject to the Insurance Code, there is another, more specific provision of the Texas Codes which brings administrators such as HUMANA specifically within the provisions of the Insurance Code. That is TEX. INS. CODE Sec. 4151.001, which provides:

> In this chapter: (1) **"Administrator"** means a person who, in connection with ... health benefits ... adjusts or settles claims for residents of this state.

> There is an exemption of sorts, in TEX. INS. CODE Sec. 4151.002.

> A person is not an administrator if the person is: . . . (17) a self-insured political subdivision; ...

There is no exemption for an administrator hired by a self-insured political subdivision. Rather, there are specific provisions that the Commissioner of Insurance may adopt rules governing Administrators. TEX. INS. CODE Sec. 4151.006.

Ordinary principles of statutory construction require this result, as well. TEX. GOVT. CODE Sec. 311.026 provides that "If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both." In case of an irreconcilable conflict, "the special or local provision prevails as an exception to the general provision, unless the general provision is the

later enactment and the manifest intent is that the general provision prevail." Here, it is possible to construe the self-funded Plan as not subject to the Insurance Code, but to have the Third Party Administrator be subject to the Code. If, however, that is considered an irreconcilable conflict, the Insurance Code Section governing Administrators is more specific than the section authorizing the creation of self-funded insurance plans, and should prevail.

## VI. <u>CONCLUSION</u>

It is undisputed that HUMANA is neither a government entity nor an employee of a government entity. Therefore, its interlocutory appeal must be dismissed. Alternatively, HUMANA has not conclusively demonstrated that it is entitled to either sovereign or official immunity. The County Court's order should be affirmed, and this case remanded for trial.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Appellee MUELLER respectfully requests that this Court dismiss HUMANA's appeal for lack of jurisdiction, or affirm the decision of the Court below, and grant Appellee such other and further relief to which she may show herself entitled.

Respectfully submitted,

Stephen G. Nagle
State Bar No. 14779400
sgnagle@lawyernagle.com
1002 West Avenue, Suite 100
Austin, TX 78701
(512) 480-0505 - Telephone
(512) 480-0571 - Facsimile
ATTORNEY FOR APPELLEE MUELLER

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4, I certify by my signature above that this

Appellant's Brief contains 4641 words. This is a computer-generated document

created in Corel Word Perfect, using 14-point typeface for all text, except for footers

which are in 12-point typeface. In making this certificate of compliance, I am relying

on the word count provided by the software used to prepare the document.

## CERTIFICATE OF SERVICE

By my signature above, I certify that a copy of the foregoing instrument was

served upon the attorneys of record of all parties to the above cause as indicated

below in accordance with Rule 9.5(b), Tex. R. App. P., on this 13th day of February,

2015.

_Via Electronically Filing_

Richard G. Foster
rfoster@prdg.com
Lisa P. Alcantar
lalcantar@prdg.com
Porter, Rogers, Dahlman & Gordon, P.C.
Trinity Plaza II
745 E. Mulberry Ave, Suite 450
San Antonio, Texas 78212

NO. 04-14-00752-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO

HUMANA INSURANCE COMPANY,

APPELLANT,

V.

MUELLER,

APPELLEE.

On Appeal from the County Court at Law No. 3,
Bexar County, Texas

Brief of Appellee Mueller

Appendix Table of Contents

1.    Indemnity language from the Administrative Services Agreement. . . . . .   22

2.    Garza v. Blue Cross and Blue Shield of Texas.. . . . . . . . . . . . . . . . . . 23-29

## ARTICLE XIII
## Hold Harmless

13.1    The Client agrees to indemnify and hold the Plan Manager harmless against any and all loss, liability, or damage (including payment of reasonable attorney's fees) which the Plan Manager may incur by reason of failure of the Client or its employees, agents or representatives to abide by the provisions of the Plans or this Agreement or to administer the Plans or assets and funds of the Plans in a prudent and proper manner; failure of the Plans or documents describing the Plan prepared or adopted by the Plan sponsor to comply with applicable laws; fraud, embezzlement, willful misconduct, or intentional disregard on the part of the Client or its employees, agents or representatives; disputes concerning denials of benefits or benefit payments made by or at the direction of the Client or the Plan Administrator; or actions taken by the Plan Manager at the direction of the Client or the Administrator.

13.2    The Plan Manager agrees to indemnify and hold the Client harmless against any and all loss, liability, or damage (including payment of reasonable attorney's fees) which the Client may incur by reason of the failure of the employees, agents or representatives of the Plan Manager to abide by this Agreement, or fraud, embezzlement, willful misconduct or intentional disregard on the part of the Plan Manager or its employees, agents, or representatives. The Plan Manager will not be liable on account of actions or inaction undertaken by it in good faith and performed in accordance with the provisions of this Agreement or for the cost of benefits under the Plan which are claimed or awarded to a Participant.

13.3    The obligations under this Article XIII shall continue beyond the term of this Agreement as to any act or omission which occurred during the term of this Agreement.


## ARTICLE XIV
## Taxes and Assessments

14.1    If a tax or other assessment, including a premium tax, with respect to the Plan (other than an income tax with respect to the fees earned by the Plan Manager) is imposed upon the Plan Manager, the Plan Manager will provide written notification to the Client together with a copy of the tax bill or assessment within ten (10) business days of receipt.

14.2    If the Plan Manager pays the tax or assessment, the Client shall reimburse the Plan Manager for any amounts paid plus reasonable out-of-pocket expenses immediately upon notification by the Plan Manager that the tax has been paid.


## ARTICLE XV
## Defense of Actions

15.1    The Client and the Plan Manager agree to cooperate with respect to (a) the determination, settlement and defense of any and all claims for benefits undertaken by the Plan Manager pursuant to this Agreement, and (b) the settlement of and conduct of a defense against any claim for benefits which has been denied, which may include attending hearings and trials and assisting in securing the attendance of witnesses and giving of evidence.

15

HIC 000818

Humana vs. Mueller, Brief of Appellee                                    page 22 of 29

Westlaw.

Not Reported in S.W.3d, 1999 WL 1078697 (Tex.App.-Austin)

**(Cite as: 1999 WL 1078697 (Tex.App.-Austin))**

C

Only the Westlaw citation is currently available.

NOTICE: NOT DESIGNATED FOR PUBLICATION. UNDER TX R RAP RULE 47.7, UNPUBLISHED OPINIONS HAVE NO PRECEDENTIAL VALUE BUT MAY BE CITED WITH THE NOTATION "(not designated for publication)."

Court of Appeals of Texas, Austin.
Gregorio GARZA, Appellant,
v.
BLUE CROSS AND BLUE SHIELD OF TEXAS, INC.; and Group Life & Health Insurance Company, Appellees.

No. 03-98-00706-CV.
Dec. 2, 1999.

From the District Court of Travis County, 53rd Judicial District, No. 95-11137; Peter M. Lowry, Judge Presiding.

Before Justices SMITH, YEAKEL and POWERS.[FN*]

FN* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West

1998).

POWERS.

*1 Gregorio Garza appeals from a summary judgment that he take nothing by his actions against Blue Cross/ Blue Shield of Texas, Inc., and Group Life and Health Insurance Company ("Appellees").[FN1] Garza appeals as well from the trial court's denial of his opposing motion for partial summary judgment. We will reverse the summary judgment recovered by Appellees, affirm the trial court judgment denying Garza's motion for summary judgment, and remand the cause to the trial court.

FN1. Garza alleged that Group Life and Health Insurance Company is a "wholly owned and controlled subsidiary of" Blue Cross/ Blue Shield of Texas, Inc. It appears that neither Appellee denied the allegation. Group Life and Health Insurance Company issued the group policy involved in the present litigation; and, the company administers a part of that policy for the Board of Trustees of the Employees Retirement System of Texas. Blue Cross/ Blue Shield of Texas, Inc., administers for the Board another part of the policy. Garza alleged that both insurers, Group Life and Health Insurance Company and

Not Reported in S.W.3d, 1999 WL 1078697 (Tex.App.-Austin)

**(Cite as: 1999 WL 1078697 (Tex.App.-Austin))**

Blue Cross/ Blue Shield of Texas, Inc., were insurance companies licensed to do business in Texas. The allegation was not denied. Because of the foregoing allegations and apparent identity of interests involved, and to obtain some clarity in our discussion, we will refer to the two insurers collectively as "Appellees."

THE CONTROVERSY

Appellees insured Garza, a state employee, under a group accidental-death and dismemberment policy administered by Appellees under the provisions of the Texas Employees Uniform Group Insurance Benefits Act. *See* Tex. Ins.Code Ann. art. 3.50-2 (West 1981 & Supp.1999) (the "Act"). After losing his sight in one eye due to an accident, Garza made a claim for benefits under the policy. Appellees opposed the claim. Garza ultimately prevailed in a contested-case proceeding under section 5B of the Act, conducted by an administrative law judge employed by the State Office of Administrative Hearings. Appellees paid the benefits claimed. Garza thereafter sued Appellees in the present cause, seeking additional sums on allegations of breach of contract, negligence and gross negligence, and statutory causes of action authorized by the Texas Insurance Code and the Texas Business and Commerce Code.

Against Garza's causes of action, Appellees interposed the affirmative defense of official immunity and moved for summary judgment on that ground. Garza moved for partial summary judgment on the ground that his actions were not, as a matter of law, barred by the doctrine of official immunity. In a single judgment, the trial court sustained Appellees' motion and denied Garza's motion, ordering that he take nothing based on the doctrine of official immunity.

Garza appeals now on three issues: (1) appellees did not establish as a matter of law the elements of official immunity; (2) affidavits filed in support of Appellees' motion are incompetent proof because, among other things, they do not show the entirety of a government contract under which Appellees claim official immunity; and (3) there was no summary judgment "evidence" showing as a matter of law that Appellees' conduct involved government discretion, an essential element of the defense of official immunity.

For reasons that will appear below, we will sustain Garza's position on the first two issues; consequently, we need not address his third issue. We will discuss separately Garza's appellate complaint directed at the denial of his motion for partial summary judgment.

DISCUSSION AND HOLDINGS

The doctrine of official immunity protects the interests of government by protecting its officers and employees from suits and liabilities based on actions taken by them in the good-faith performance of discretionary

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 1999 WL 1078697 (Tex.App.-Austin)

**(Cite as: 1999 WL 1078697 (Tex.App.-Austin))**

duties coming within the scope of their official authority. *See Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994). Where official immunity protects a government officer or employee, the government entity for which they act derives immunity therefrom by operation of the *respondeat superior* principle. *See Dewitt v. Harris County,* 904 S.W.2d 650, 653 54 (Tex.1995); *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993). This derived immunity is not to be confused with the government entity's sovereign immunity, which protects the government entity directly. *See Kassen,* 887 S.W.2d at 8.

**\*2** The Board of Trustees of the Employees Retirement System of Texas, a unit of state government, acts as "trustee" under the Act. *See* Act § 3(a)(11). Section 4 of the Act provides as follows:

The administration and implementation of this Act are vested *solely* in the trustee. As it shall deem necessary to insure the proper administration of this Act and the insurance coverages, services, and benefits provided for or authorized by this Act, the trustee, as an agency of the State of Texas, shall have full power and authority to hire *employees.* The duties of such employees and their compensation shall be determined and assigned by the trustee. The trustee may, on a competitive bid basis, *contract* with a qualified, experienced firm of group insurance specialists or an *administering firm* who shall *act for* the trustee in a capacity as *independent administrators* and managers of the programs authorized under this Act. The *independent administrator* so selected by the trustee shall *assist* the trustee to insure the proper administration of the Act and the coverages, services, and benefits provided for or authorized by the Act and shall be paid by the trustee ... Also, as an agency of the State of Texas, the trustee shall have full power and authority to enter into *interagency contracts* with any department of the State of Texas. The interagency contracts shall ... define the services to be performed by the departments for the trustee. The trustee shall have full power and authority to promulgate all rules, regulations, plans, procedures, and orders reasonably necessary to implement and carry out the purposes and provisions of this Act in all its particulars,....

Act § 4 (emphasis added).

Section 4, on its face, contemplates that the trustee, an artificial person, shall exercise its exclusive power of administration and implementation through rulemaking and through contracts with others, namely: (1) contracts with employees; (2) interagency contracts with other departments of the state; and (3) competitive-bid contracts with "independent administrators and managers" who "act for" and "assist the trustee to insure" proper administration of the Act and the coverages, services, and benefits provided thereunder. It is undisputed that Ap-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 1999 WL 1078697 (Tex.App.-Austin)
**(Cite as: 1999 WL 1078697 (Tex.App.-Austin))**

pellees entered into a contract falling within the third class of contracts, and base their claim of official immunity on section 4 of the Act and the terms of their contract as independent administrator. It is also undisputed that the trustee is a government entity and that Appellees are private corporations engaged in the business of insurance in addition to their work as independent administrator under the contract.

Because Appellees are not themselves government officers or employees, it appears at first blush that they could not meet the first prerequisite for invocation of the doctrine of official immunity; that doctrine is generally not available to private persons because litigation against them does not have the effect of frustrating or disrupting government functions and discouraging efficient and effective public service-the purposes underlying the doctrine. *See Wyatt v. Cole,* 504 U.S. 158, 168 69 (1992). But it is sometimes necessary or convenient for government entities to contract with private persons to perform duties that the government entities are legally required to perform, perhaps by the terms of a statute or a court order. In those exceptional circumstances the private contracting parties may be entitled to invoke the doctrine of official immunity. *See e.g., Eagon v. City of Elk City,* 72 F.3d 1480, 1489 90 (10th Cir.1996); *Williams v. O'Leary,* 55 F.3d 320, 323 24 (7th Cir.1955). This exception to the general rule is the basis of decision in *Guerrero v. Tarrant County Morti-*

*cian Services Co.,* 977 S.W.2d 829, 832 (Tex.App.-Fort Worth 1998, pet. denied); *Knowles v. City of Granbury,* 953 S.W.2d 19, 24 (Tex.App.-Fort Worth 1997, pet. denied); and *Puthoff v. Ancrum,* 934 S.W.2d 164, 169 (Tex.App.-Fort Worth 1996, writ denied).[FN2]

FN2. In relation to the doctrine of *sovereign* immunity, it has been said numerous times that the government's immunity from suit does not extend to an independent contractor doing work for the state, but a private person contracting with government to perform services shares the government's immunity when the government directs and controls the details of his work. *See, e.g., K.D.F. v.. Rex,* 878 S.W.2d 589, 597 (Tex.1944); *TRST Corpus v. Financial Center,* 1999 Tex.App. LEXIS 5826 (Tex.App.-Houston [14th Dist.] August 5, 1999); *Lyons v. Lindsey Morden Claims Management,* 958 S.W.2d 86, 91 (Tex.App.-El Paso 1998), *motion for rehearing overruled,* 985 S.W.2d 86 (1999); *Gonzales v. Heard, Goggan, Blair & Williams,* 923 S.W.2d 764, 766 (Tex.App.-Corpus Christi 1996, writ denied); *Perser v. City of Arlington,* 738 S.W.2d 783, 784 (Tex.App.-Fort Worth 1987, writ denied). One decision, *Bennack Flying Service v. Balboa,* 1999 Tex.App. LEXIS 4757 (Tex.App.-Corpus Christi June 24,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 1999 WL 1078697 (Tex.App.-Austin)
**(Cite as: 1999 WL 1078697 (Tex.App.-Austin))**

1999), appears to apply these sovereign-immunity distinctions in the context of an official-immunity defense.

**\*3** We turn then to determine whether Appellees established the aforesaid exception as a matter of law, which they claim by citation to *Guerrero, Knowles,* and *Puthoff.* We conclude the summary judgment proof fails in that regard.

Appellees' contract with the trustee is not found in the summary judgment record.[FN3] The record does include verified fragments of two other documents. The first is a copy of a "Request for Proposal" issued by the Employees Retirement System of Texas, pertaining to a proposed contract to provide services as an independent administrator under section 4 of the Act. The document is verified by an affidavit to which it is attached. The first twenty-six pages of the document are omitted from the verified copy, however, and the affiant's oath extends only to the pages attached to his affidavit. The record also contains what is represented to be a copy of Appellees' response to the "Request for Proposal." According to the affiant who verified the attached copy, it is Appellees' response to the "Request for Proposal" and was accepted by the System as a basis for their resulting contract. The copy of this document also appears to be only a part of Appellees' response. And while the affiant declares that the copy sets forth Appellees' obligations and rights as independent administrator in the resulting contract, he does not swear that the attached pages set forth the entirety of Appellees' obligations and rights under the resulting contract, if we understand correctly the tenor of his affidavit.

> FN3. In his motion for summary judgment, Garza pointed out these omissions from the verified copies, stating that the omission may have been intentional because the contract actually arrived at by Appellees and the trustee covered only health-benefit claims and stated that Appellees were "independent contractors" whose employees would not be considered employees of the State of Texas or the Employees Retirement System of Texas. Garza did not, however, file in the summary judgment record a verified copy of the entire contract, the "Request for Proposal," or Appellees' response. He stated, however, that the contract itself was a "public document."

In sum, the summary judgment record does not establish directly (by a verified copy of the contract itself) nor indirectly (by reference to the proposal and response) the complete terms of the contract made by Appellees and the trustee whereunder the former acts as independent administrator. Because of this deficiency in the record, one cannot determine as a matter of law the nature or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 1999 WL 1078697 (Tex.App.-Austin)

**(Cite as: 1999 WL 1078697 (Tex.App.-Austin))**

relevancy of Appellees' duties under the contract, which of them are governmental in nature and represent duties that the trustee is legally required to perform, or whether the trustee retained a duty to perform itself any particular duties.

Given the foregoing omissions from the summary judgment record one cannot know whether the purposes of the official immunity doctrine are at risk by reason of Garza's causes of action. And if the purposes of the doctrine are not exposed to injury by reason of a particular function that might be pertinent, then the exception cannot apply. *See Forrester v. White*, 484 U.S. 219, 227 (1988) ( "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches."). Moreover, the immunity attaches to private persons with respect to only those acts for which the government entity would have been immune had it performed them directly instead of contracting for their performance by private persons. *See Eagon*, 72 F.3d at 1489.

Notwithstanding any deficiency in the summary judgment record, it appears that all of Garza's causes of action pertain, on their face at least, to Appellees' responsibilities as Garza's insurer-that Appellees failed promptly to pay or settle his claim after liability had become reasonably clear and that they engaged in unfair or deceptive acts or practices in the business of insurance. Appellees have not shown, *as a matter of law,* that any of their functions as independent administrator are pertinent to these allegations; much less have they shown that these functions are functions the trustee was itself legally required to perform. In these circumstances, it cannot be said as a matter of law that Appellees established their affirmative defense of official immunity. *See NF Indust. v. Export Import Bank,* 846 F.2d 998, 1000-01 (5th Cir.1988) (Defendant "has made no showing here that its duties require the exercise of governmental policymaking as distinguished from insurance policy-writing.").

**\*4** We hold accordingly and reverse the summary judgment that Garza take nothing by his actions against Appellees.

There remains the issue of whether the trial court erred in denying Garza's motion for summary judgment.

The first ground urged by Garza in his motion for summary judgment was that Appellees were not, as a matter of law, entitled to invoke the official-immunity defense because they were not government employees or officers. What we have said above in connection with Appellees' opposing motion is sufficient to demonstrate that Garza was not entitled to judgment as a matter of law on this ground. The record simply does not justify a determination as a matter of law that the exception to the general rule does or does not apply.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 1999 WL 1078697 (Tex.App.-Austin)
**(Cite as: 1999 WL 1078697 (Tex.App.-Austin))**

Garza urged in his second ground that there was "no evidence" that governmental discretion, an essential element of the official-immunity defense, "was involved in the acts made the basis of plaintiff's petition, which involved negligence and other torts in the business of insurance." He contends now that the record contains no such evidence and the trial court erred because it was required, in this state of the record, to grant Garza's motion. *See* Tex.R. Civ. P. 166a(i).

We are not prepared to say, as a matter of law, that *none* of the duties evidently required of Appellees as independent administrators "involved" acts made the basis of Garza's causes of action. For example, the "Request for Proposal" and Appellees' response thereto, although fragmentary, set out certain duties Appellees were required to perform in connection with contested-case proceedings such as that which preceded payment of Garza's claim. The verified copies of these documents, while not evidence sufficient to establish the entirety of Appellees' contract with the trustee, are some evidence of Appellees' duties as independent administrator. One cannot say with assurance that Appellees' duties in connection with Garza's contested-case proceeding had *nothing* to do with the delays in payment of which he complains in his petition. Evidence justifying a conclusion of that kind is not to be found in the summary judgment record.

We hold the trial court did not err in denying Garza's motion for partial summary judgment.

For the reasons given, we reverse the judgment recovered by Appellees, affirm the denial of Garza's motion for partial summary judgment, and remand the cause to the trial court.

Tex.App.-Austin,1999.
Garza v. Blue Cross and Blue Shield of Texas, Inc.
Not Reported in S.W.3d, 1999 WL 1078697 (Tex.App.-Austin)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.